**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ANDY COMBITES, | Civil No. 04-4571 (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| SIMONDELIVERS, INC., | |
| Defendant. | |

Steven Andrew Smith and Katherine C. Bischoff, **NICHOLS KASTER & ANDERSON, PLLP**, 80 South Eighth Street, Suite 4644, Minneapolis, MN 55402, for plaintiff.

Gregory James Stenmoe, Tamika R. Nordstrom, and Renee A. Michalow, **BRIGGS & MORGAN**, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for defendants.

Plaintiff Andy Combites brought this lawsuit against his former employer, defendant SimonDelivers, Inc., alleging violations of the Minnesota Whistleblower Act and the Federal Family and Medical Leave Act ("FMLA"). Defendant moves for summary judgment on plaintiff's claims. For the reasons discussed below, the Court grants defendant's motion.

**BACKGROUND**

Defendant is an online grocery store. Plaintiff began working for defendant in 2002 in its marketing department. Although the employment relationship was positive at

first, it began to deteriorate in the summer of 2003, about the time that the defendant's management changed.

In January 2004, plaintiff requested four weeks of leave under the FMLA, to be used in June 2004, because his wife was expecting their first child. Defendant's Director of Human Resources, Alix Colehour, approved the leave at that time. David Gandrud, who became plaintiff's supervisor at roughly the same time, also approved the leave in April 2004.

On April 21, 2004, plaintiff attended a seminar on compliance with the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, ("CAN-SPAM Act"), which regulates the commercial use of email. After the seminar, plaintiff became concerned that defendant was sending emails in violation of the CAN-SPAM Act. Plaintiff claims to have told his co-workers, as well as Gandrud, about his concerns, however, none of plaintiff's co-workers remember him telling them that he thought the company's email practices violated CAN-SPAM.

Shortly thereafter, Gandrud asked plaintiff to send a direct mail advertisement to the Minnesota Women's Golf Association ("MWGA") members. Defendant had obtained the MWGA's membership list from defendant's new CEO, whose wife was a member of the MWGA. Plaintiff told Gandrud that he was uncomfortable sending the letter because he thought the MWGA might have privacy policies regarding the use of its list. Gandrud assigned the project to another employee.

On May 17, 2004, plaintiff met with Gandrud and Laura Mattsfield, another marketing employee, regarding marketing team priorities and other department matters.

During the meeting, plaintiff stated that he had some issues with defendant's marketing priorities. Plaintiff claims that Gandrud asked him to elaborate further on his frustrations, and that plaintiff initially refused, saying he felt uncomfortable doing so. When Gandrud insisted, however, plaintiff voiced his concerns about the company. The parties do not dispute that this was a very heated discussion.

Two days later, Gandrud met with plaintiff alone. He told plaintiff that his behavior during the May 17 meeting was unprofessional, and that he should not have made the comments he did in front of his co-worker. Gandrud also said that plaintiff seemed to be "distracted" at work recently and that work needed to be his top priority. Plaintiff responded that he had been feeling "stressed" due to certain personal matters unrelated to work, including the upcoming birth of his child, a car accident, and credit card theft.

Plaintiff was terminated on May 20, 2004. Defendant claims that plaintiff was terminated because of his outburst during the May 17 meeting, as well as poor attitude and fit with defendant's new management.

## ANALYSIS

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate in the absence of any genuine issue of material fact, and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

## II.   WHISTLEBLOWER ACT

Minnesota Statute § 181.932 (the "Whistleblower Act") prohibits an employer from taking adverse employment action against an employee because the employee reported in good faith a violation or suspected violation of any federal or state law or rule to the employer. The Whistleblower Act also prohibits an employer from taking adverse action against an employee for "refusing" to perform an action that the employee has an objective basis in fact to believe violates any law or rule, as long as the employee informs the employer that the order is being refused for that reason.

Claims under the Whistleblower Act are analyzed under the *McDonnell Douglas* burden-shifting framework. *Ring*, 250 F. Supp. 2d at 1134 (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983) and *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under *McDonnell Douglas*, the plaintiff first is required to establish a prima facie case of discrimination. The burden of production then shifts to defendant to assert a legitimate reason for the allegedly discriminatory action.

*McDonnell Douglas*, 411 U.S. at 802. If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the asserted legitimate reason was merely a pretext for a discriminatory action. *Id.* at 804.

A prima facie case under the Whistleblower Act consists of (1) statutorily protected conduct by the employee; (2) adverse employment action; and (3) a causal connection between the two. *Ring*, 250 F. Supp. 2d at 1134 (citing *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn. 1995)). The parties do not dispute that plaintiff's termination constitutes an adverse employment action. Therefore, the only two issues regarding the prima facie case are whether plaintiff engaged in protected conduct, and whether plaintiff can show a causal connection.

Plaintiff argues that his statement to Gandrud that he was uncomfortable sending emails to the MWGA list because of his concern that the CAN-SPAM Act may prohibit such emails constitutes protected "reports" and a protected "refusal." Even if plaintiff's conduct qualified as protected activity under the Whistleblower Act, plaintiff has failed to show a causal connection between that conduct and his termination, and as a result, summary judgment is appropriate on this claim.

First, plaintiff argues that a causal connection may be inferred based on the temporal proximity between his conduct and his termination. Temporal proximity alone is generally insufficient to establish causation where there is an intervening event between the employee's protected conduct and the adverse employment action. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). In *Kiel*, the plaintiff attempted to show causation through close temporal proximity. The Eighth Circuit noted

that the plaintiff's requests for a reasonable accommodation were protected communications under the Americans with Disabilities Act ("ADA"). However, the court also noted that the plaintiff had engaged in unprofessional behavior, and that such behavior "eroded" any causal connection that could be inferred from the temporal proximity alone:

> Kiel's requests for a TDD were protected communications. Insulting Ms. Fry and indulging in an angry outburst in the presence of co-workers, however, were certainly not, for the ADA confers no right to be rude. Kiel's intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination.

*Id.*; *see also Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) (quoting *Kiel*, and holding that the intervening events of plaintiff missing work and defendant undergoing a reduction-in-force "eroded" any causal connection between the plaintiff's protected conduct and her termination).

Plaintiff does not dispute that he had an outburst in front of his supervisor and a co-worker at the May 17 meeting. Even if plaintiff had engaged in protected conduct under the Whistleblower Act, the Whistleblower Act "confers no right to be rude," to act unprofessionally, or to yell at one's supervisor in front of a co-worker. *See id.* As in *Kiel* and *Cheshewalla*, plaintiff's outburst at the May 17 meeting is an intervening event that "erodes" any causal connection based on temporal proximity.

Second, plaintiff claims that a causal connection may be inferred based on his allegation that he was treated differently from Laura Mattsfield, a co-worker in the marketing department. Plaintiff claims that Mattsfield also engaged in heated conversations with Gandrud, but was not terminated for those conversations. Plaintiff

offers no specific examples of Mattsfield's conduct or treatment, and provides no further support for or information about this allegation. Without more, this kind of conclusory allegation does not provide a basis for the Court to infer that a causal connection exists between plaintiff's allegedly protected conduct and his termination.

Because plaintiff has failed to set forth facts showing a causal connection between his allegedly protected conduct and his termination, he has not met his burden to establish a prima facie case. Accordingly, the Court grants defendant's motion for summary judgment on this claim.

### III. FMLA

The Family Medical Leave Act allows employees to take up to twelve weeks of leave for the birth of a child. 29 U.S.C. § 2612(a)(1)(A). The FMLA makes it unlawful for an employer to "interfere" with employees' rights under the Act. 29 U.S.C. § 2615(a)(1). Plaintiff claims that defendant unlawfully "interfered" with his FMLA rights by terminating him before his FMLA leave began.

To establish an interference claim under the FMLA, an employee "need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Carlsen v. Green Thumb, Inc.*, 2004 WL 234406, at * 6 (D. Minn. Feb. 4, 2004) (citing *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001)); *see also* 29 U.S.C. §§ 2612(a)(1)(D), 2615(a)(1); 29 C.F.R. § 825.220(b); *Regan v. Natural Resources Group, Inc.*, 345 F. Supp. 2d 1000, 1010 (D. Minn. 2004) (quoting *Carlsen*). Although an employer's intent is not relevant to an interference claim, courts have held that the FMLA does not impose strict liability on employers. *Throneberry v.*

*McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005). Rather, "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Id.*

In *Hayes*, the plaintiff was terminated while she was on FMLA leave, and later brought an interference claim against her former employer. *Hayes v. U.S. Bancorp Piper Jaffray Inc.*, 2004 WL 2075560, at *12 (D. Minn. Sep. 16, 2004). The defendant responded that plaintiff was terminated because there was a reduction in force, and plaintiff's division had poor performance. *Id.* Reviewing plaintiff's deposition testimony, the court noted that plaintiff did not contest that a reduction in force had taken place, or that her division had poor performance. *Id.* Further, when asked why she thought her termination was related to her leave, plaintiff responded, "I feel that my position was eliminated because I went on FMLA leave," but offered no support or explanation for that assertion. *Id.* Based on plaintiff's deposition testimony, as well as deposition testimony from defendant's employees, the court held that the defendant had "presented sufficient uncontroverted evidence that [plaintiff's] termination was not an impermissible interference with her right to reinstatement under the FMLA." *Id.*

In this case, plaintiff contends that his termination was an impermissible interference with his FMLA rights. Defendant responds that plaintiff was terminated because of growing friction between himself and management, with plaintiff's outburst at the May 17 meeting being the final straw. Plaintiff does not dispute that he had disagreements with the new management about defendant's policies and practices, nor

- 8 -

does he dispute that had an outburst in front of his supervisor and a co-worker at the May 17 meeting. Moreover, although plaintiff offers Gandrud's "distracted" comment as evidence supporting his FMLA claim, plaintiff's deposition testimony reveals that plaintiff told Gandrud that his "distraction" was due to numerous factors, including the fact that his wife was going to have a baby, that his car was in the repair shop, and that his credit card might have been stolen. (Pl. Dep. at 105:10-21.) These concerns, though understandably distracting, are not related to plaintiff's FMLA leave.

The Court finds that defendant has presented sufficient, uncontroverted evidence that it would have made the decision to terminate plaintiff for his outburst and ongoing relationship with management regardless of whether plaintiff had asked to exercise his FMLA rights. Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's FMLA claims.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 26] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 14, 2005            s/ John R. Tunheim
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                                  United States District Judge